# UNITED STATES *v.* COLORADO ANTHRACITE CO.

## APPEAL FROM THE COURT OF CLAIMS.

No. 227. Argued April 25, 1912.—Decided May 27, 1912.

An assign within the meaning of § 2 of the act of June 16, 1880, 21 Stat. 287, c. 244, is one who becomes invested with the entryman's right in the land through the voluntary act of the latter.

While a mere quitclaim deed does not pass after acquired title, the equitable title of one who was also trustee to acquire the title for the grantee will pass by such a deed.

Equity usually looks upon that as done which ought to have been done. The act of June 16, 1880, proceeds upon equitable principles and should be administered accordingly.

A remedial statute, such as § 2 of the act of June 16, 1880, should be interpreted with appropriate regard to the spirit which prompted it; and that act is therefore construed so as to return money erroneously paid for an entry that cannot be confirmed to the party entitled to receive it.

One for whom an entryman initiates and obtains an allowance for an entry, and to whom the entryman gives a quitclaim deed is an assign within the meaning of § 2 of the act of June 16, 1880, and entitled to recover the purchase price if the entry cannot be confirmed, provided the arrangement was not forbidden by law.

Under § 2 of the act of June 16, 1880, the assign of an entryman can-

not recover the purchase price paid if there was any. fraud practiced by it in connection with the entry; an entry fraudulently obtained is not one erroneously allowed.

Under §§ 2347–2352, Rev. Stat., providing for coal-land entries, one cannot enter for another who has had the full benefit of the law; but, in the absence of evasion of restrictions as to quantity, there is no prohibition, express or implied, against an entry by a qualified person for the benefit of another person fully qualified to make the entry in his, or, if a corporation, in its, own name.

A corporation is an association of persons within the meaning of the coal-land entry provisions of §§ 2347–2352, Rev. Stat.

Where it does not appear that a corporation had previously entered its full amount of coal lands under §§ 2347–2352, Rev. Stat., an entry made on its behalf by a qualified entryman is not illegal; and an affidavit that the latter was not making the entry for another, the falsity of which is disclosed on a contest, becomes harmless and does not affect the right of the entryman or his assign to recover the price paid under § 2 of the act of June 16, 1880.

The rule that fraud is not presumed and that one basing his defense thereon should prove it, applies to the Government; and if the answer contains no allegation of fraud, silence in the findings of the court below will be taken as showing that none was proved, and an affirmative finding that there was no fraud is not necessary to sustain the judgment.

45 Ct. Cl. 614, affirmed.

THE facts, which involve the validity of an entry for coal land under § 2348, Rev. Stat., and the right of an assign of the entryman to recover the amount paid to the United States, are stated in the opinion.

*Mr. Assistant Attorney General John Q. Thompson* for the United States.

*Mr. Charles A. Keigwin*, with whom *Mr. E. W. Spalding* was on the brief, for appellee.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was an action, under the act of June 16, 1880, 21 Stat. 287, c. 244, § 2, for the repayment of the purchase

price paid to the Government for 160 acres of public coal lands, the entry of which was subsequently canceled. The plaintiff prevailed in the Court of Claims, 45 C. Cl. 614, and the Government has appealed, claiming that on the findings the judgment should have been in its favor.

Briefly stated, the material facts shown by the findings are as follows: One Stoiber, who claimed a preference right of entry under Rev. Stat., § 2348, filed in the proper local land office the requisite declaratory statement, and thereafter made application to enter the land. Accompanying the application was an affidavit, made by his agent, stating that Stoiber was making the entry for his own use and benefit, and not directly or indirectly for another. Other applications for the same land resulted in a contest proceeding before the local land office, and after the hearing therein the register and receiver sustained Stoiber's application, accepted the purchase price of the land, which was $3,200, and issued to him the usual duplicate receipt. This, in the nomenclature of the public-land laws, was the allowance of an entry. The other parties to the contest appealed to the Commissioner of the General Land Office, who, upon the same evidence that was submitted to the local office, ruled that Stoiber's application ought not to have been sustained; that his entry had been erroneously allowed and could not be confirmed, and therefore that it must be canceled. That decision was affirmed by the Secretary of the Interior, and the entry was canceled accordingly. In filing the declaratory statement and making the entry Stoiber was not seeking to acquire the land for himself but for the Colorado Anthracite Company, the plaintiff here, to which he already had given a quitclaim deed. This was not denied or concealed at the hearing in the contest, but, on the contrary, was admitted and was affirmatively shown by the testimony of the witnesses for Stoiber, including the agent who made the affidavit before mentioned. The purchase price paid at the time of the

entry, which was after the hearing, was furnished by the company because the entry was being made for its benefit. No conveyance of the land was made by Stoiber other than the quitclaim deed just mentioned, and the purchase money so paid was covered into the Treasury and is still held by the Government. After the cancellation of the entry the company applied to the Secretary of the Interior for repayment to it of the purchase price, and Stoiber and the company executed a relinquishment of all claims to the land and surrendered the duplicate receipt; but the application was denied on the theory that the company was not an assign of the entryman within the meaning of the act. Stoiber then applied to the Secretary for repayment, and, the application being refused, brought suit in the Court of Claims, which gave judgment for the Government on the ground that the purchase price had been paid by the company and not by Stoiber. 41 Ct. Cl. 269, 275. Thereupon the company brought the present suit, with the result before stated.

As reasons for asking a reversal of the judgment the Government contends that the facts as found disclose, first, that the company is not an assign within the meaning of the act, and, second, that the entry was procured fraudulently, in contravention of the coal-land laws, and therefore that repayment cannot be allowed.

The act of 1880, in § 2, provides that where, from any cause, an entry of public land "has been erroneously allowed and cannot be confirmed," and is duly canceled by the Commissioner of the General Land Office, "the Secretary of the Interior shall cause to be repaid *to the person who made such entry, or to his heirs or assigns*, the fees and commissions, amount of purchase money, and excesses paid upon the same upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to said land."

As we think Stoiber is the person who made the entry in

the sense of this act, even although he made it for the benefit of the company and paid the purchase price with money furnished by it, we come at once to the question, whether on the findings the company is his assign within the meaning of the act. It is said that the answer must be in the negative, because there was no conveyance of the land from him to the company while the entry was in force, that is, after its allowance and before its cancellation. By the decisions of this court in *Hoffeld* v. *United States*, 186 U. S. 273, and *United States* v. *Commonwealth Title Insurance & Trust Co.*, 193 U. S. 651, it is settled that an assign, within the meaning of the act, is one who becomes invested with the entryman's right in the land through some voluntary act of his; and it must be conceded that, generally speaking, a mere quitclaim deed passes only such interest as the grantor possesses at the time and does not reach an after-acquired title. But here there was something more than a mere quitclaim deed, executed in advance of the acquisition of any interest by the entryman. The entry was made at the instance of the company, with its money and for its benefit, and, unless the coal-land law forbade it, the entryman, by his voluntary action in that regard, became a trustee for the company and charged with an obligation to convey the land to it. *Irvine* v. *Marshall*, 20 How. 558; *Ducie* v. *Ford*, 138 U. S. 587, 592; *Smithsonian Institution* v. *Meech*, 169 U. S. 398, 406. Not only so, but equity, which usually looks upon that as done which ought to have been done, would regard such a conveyance as actually made, and therefore treat the company as an assign. We speak of the view which equity would take of the matter, because it is manifest that the act of 1880 proceeds upon equitable principles and is intended to be administered accordingly. Like other highly remedial statutes, it should be interpreted with appropriate regard to the spirit which prompted it. And, when it is so interpreted, we think the term "assigns" includes

one in the company's situation, if only the arrangement between it and Stoiber was not forbidden by law.

We are thus brought to the question, whether the facts found disclose that Stoiber and the company were engaged in an effort to acquire the land fraudulently, in contravention of the coal-land law, Rev. Stat., §§ 2347–2352. If they were, the company is not entitled to repayment, first, because it then would not be entitled to invoke the equitable maxim before stated, without the aid of which it could not be deemed an assign within the meaning of the act, and, second, because the right to repayment is restricted by the act to instances in which the entry has been "erroneously allowed," an expression which denotes some mistake or error on the part of the land officers whereb an entry is allowed when it should be disallowed, and not some fraud or false pretense practiced on them whereby an applicant appears to be entitled to the allowance of an entry when in truth he is not. Of this expression it is said, correctly, we think, in the regulations of the Land Department adopted under § 4 of the act soon after its enactment and ever since in force:

"This cannot be given an interpretation of such latitude as would countenance fraud. If the records of the Land Office, or the proofs furnished, should show that the entry ought not to be permitted, and yet it were permitted, then it would be 'erroneously allowed.' But if a tract of land were subject to entry, and the proofs showed a compliance with law, and the entry should be canceled because the proofs were shown to be false, it could not be held that the entry was 'erroneously allowed;' and in such case repayment would not be authorized."

While the coal-land law does not expressly prohibit an entry by one person for the benefit of another, it does limit the quantity of land that may be acquired thereunder by one person to 160 acres, and the quantity that may be acquired by an association of persons to 320 acres

and, in exceptional instances, 640 acres; and it declares that its sections "shall be held to authorize only one entry by the same person or association of persons; and no association of persons any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof; and no member of any association which shall have taken the benefit of such sections shall enter or hold any other lands under their provisions." These restrictions, as this court has held, forbid individuals and associations from acquiring public coal land in excess of the quantities prescribed, whether directly by entries in their own names or indirectly by entries made for their benefit in the names of others. And so, one person cannot lawfully make an entry in the interest of another who has had the benefit of the law, or in the interest of an association where it or any of its members has had the benefit thereof, or in the interest of a person or an association where he or it has not had such benefit but is seeking, through entries made or to be made by others in his or its interest, to acquire a greater quantity of land than is permitted by the law. *United States* v. *Trinidad Coal and Coking Co.*, 137 U. S. 160; *United States* v. *Keitel*, 211 U. S. 370; *United States* v. *Forrester*, 211 U. S. 399; *United States* v. *Munday*, 222 U. S. 175. But there is no prohibition, express or implied, against an entry by a qualified person for the benefit of another person or association where he or it is fully qualified to make the entry in his or its own name, and is not seeking to evade the restrictions in respect of quantity.

A corporation is an association of persons within the meaning of the law, *United States* v. *Trinidad Coal and Coking Co.*, *supra*, and therefore the company here, which was a Colorado corporation, lawfully could have made the entry in question in its own name, unless it or some member of it had had the benefit of the coal-land law or

was seeking, through this and other like entries, to acquire coal land in excess of the quantity prescribed. In other words, the fact that the entry was made in the name of Stoiber for the benefit of the company does not, without more, establish that it was forbidden or fraudulent. There is no finding that the company or any member of it had had the benefit of the law or was seeking to acquire more than this 160 acres. So, for aught that appears, there was no legal obstacle to the entry being made in the company's name, and the fact that it was not may have been due to matters not affecting its validity or integrity. We do not overlook the finding that the application was accompanied by an affidavit stating that Stoiber was making the entry for his own use and benefit, and not directly or indirectly for another. Of course, the other findings show that that statement was untrue. Had it remained uncorrected it probably would have deceived the officers of the land office and prevented any inquiry into the qualifications of the company. But, according to the findings, it did not remain uncorrected, and could not have deceived the officers, for at the hearing in the contest, which preceded the allowance of the entry, it was admitted and shown that Stoiber was not seeking to acquire the land for himself, but for the company, to which he already had given a quitclaim deed. The statement in the affidavit therefore became harmless, for it was upon the evidence given in the contest that the entry was allowed. It follows that upon the findings it cannot be said that the arrangement between Stoiber and the company was forbidden by law or that the entry was fraudulently procured.

But it is said that an affirmative finding that the entry was not fraudulently procured is essential to sustain the judgment. To this we cannot agree. Fraud is not presumed, and one who bases a right or defense upon it should allege and prove it. The Government's answer

contains no allegation of fraud, and the silence of the findings may rightly be taken as showing that none was proved. The findings fully respond to the issues presented by the pleadings, and, we think, sustain the judgment.

*Judgment affirmed.*