Booth, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
The claimant herein made a desert-land entry at the land office in Wyoming for a tract of land in said State. The act of March 3, 1877, 19 Stat. L., 377, required an advance payment of 25 cents per acre, and this amount the claimant paid. On October 27, 1890, the Commissioner of the General Land Office canceled claimant’s entry aforesaid and refused the repayment of the amount theretofore paid. This suit is to recover the same, amounting in all to $160.
The findings show that the claimant conformed to the terms of the act of March 3,1877, in so far as the initiatory proceedings are concerned, but for some reason failed to pursue the subsequent course mapped out in the act preliminary to investiture of title. The law upon which he now relies for reimbursement is the act of March 26, 1908, 35. Stat. L., chap. 102, p. 48, and reads as follows:
“ That where purchase moneys and commissions paid under any public-land law have been or shall hereafter be covered into the Treasury of the United States under any application to make any filing, location, selection, entry, or proof, such purchase moneys and commissions shall be repaid to the person who made such application, entry, or proof, or to his legal representatives, in all cases where such application, entry, or proof has been or shall hereafter be rejected, and neither such applicant nor his legal representatives shall have been guilty of any fraud or attempted fraud in connection with such application.”
The Land Office, in its administration of land affairs, has continually maintained a technical distinction between a “rejection” of a claim and the “cancellation” of one. In the former instance the officers treat a claim as rejected where a disputed record is before them and issue raised as to the* entryman’s rights. The cancellation of a claim in the sense in which the officers characterize this proceeding is the ex parte act of the officials upon discovering a failure to comply with the law within the time stated. A cancellation of an entry, it is true, follows the rejection of the same, but the *335 dual character of the one proceeding does not of itself destroy the technical distinction attributed to it when applied to a controversy over a land entry. An entry may be canceled by the action of the department upon an examination of the record in the case without the intervention of any outside influence, wherein it develops an error has been made, or it may be done when attention is called thereto; but as we gather from the record and decisions of the Land Office a rejection follows a proceeding quite different in detail and form. The facts in this case clearly illustrate the distinction and solve what might at first blush seem an ex-' tremely narrow and technical distinction. The claimant preferred his claim and made the first payment, a very nominal sum of 25 cents per acre. Thereafter he did nothing to perfect his title and secure patent to the lands entered. No one intervened to forestall a compliance with the law, and the Land Office raised no objections and placed no obstacles in the way of his confirming the entry. It was in effect an abandonment of a right the claimant might have pursued to completion, and all that remained to ascertain the fact was an examination of the records of the Land Office.
Aside from the fact that the court must presume that Congress in using the term “rejected” intended to give it the meaning ascribed to it by the Land Office in years of departmental construction, we can not assume a legislative intention to refund money paid in strict accord with beneficial legislation in a case where the Government has observed its obligations and the claimant has not. Some purpose was to be conserved by the nominal advance payment; it was in part intended as an evidence of good faith, a guarantee for future proceedings. If not so, no provision would have been made therefor, and it seems illogical to import an intention to Congress in the refunding act of 19Ó8 to pay back to delinquents this small sum when they are alone responsible for the failure to acquire the coveted lands.
If the situation was the reverse innumerable land entries might be legally made the basis of extensive speculation in public lands, and thus defeat the avowed purposes of the Government in opening up the public domain to settlement.
*336 A reason exists for refunding sums paid in cases of rejection, for in every instance some hindrance appears which is not attributable alone to the entrymen; some contest arises which, if free from fraud, leaves just and equitable reasons for refunding sums paid through misapprehension, mistake, etc. No such reason appears here, and while the case is free from fraud it is absolutely devoid of any showing which could have possible incited-the doing of anything more than the cancellation of the entry for abandonment.
We have carefully examined the authorities in the briefs. The court finds no case similar as to facts. A review of the cases, however, attests a uniform procedure and holding by the Land Office in its various opinions upon the subject in harmony with the views expressed herein. The case of Yan H. Gwinn, No. 30742, is not a contrary determination. There was a contest in that case; evidence was taken, a rejection resulted; Gwinn followed the law; he had done all that was necessary for him to do up to the time his entry was canceled. In this case, so far as the record discloses, the claimant made the advance payment, and thereafter did nothing whatever to perfect his title. It is shown that he could have obtained a patent if he had simply pursued the course prescribed by the statute. No objections were interposed from any source that the land was not subject to entry or that the law had not been followed.
The Supreme Court in United States v. Colorado Anthracite Co., 225 U. S., 219, 223, in speaking of the act of June 16, 1880, a refunding act similar in most respects to the act of 1908, said: “We speak of the view which equity would take of the matter, because it is manifest that the act of 1880 proceeds upon equitable principles and is intended to be administered accordingly.” This holding is both logical and just. It is inapplicable to the present case, however, for the equities of the transaction are not with the claimant, and it would be an unwarrantable extension of the doctrine to apply it to circumstances which indisputably sustain an abandonment of a land entry without disclosing any reason therefor. It is impossible to escape from a conclusion that Congress did not by the act of 1908 intend to indiscriminately refund all advanced payments made in pursuance of *337 law upon a land entry upon the mere proof that the same had been made. The Land Office has given refunding acts the very widest latitude and announced most generous and equitable decisions with respect to this subject.
In the case of Dorothy Ditmer, 43 L. D., 104, it was said: “Whenever an application, entry, or proof fails or is defeated for any cause short of voluntary abandonment or relinquishment by the applicant, it is ‘rejected’ within the meaning of the repayment act of March 26, 1908 * *
This course has been consistently pursued, as evidenced by the decisions in the numerous cases cited on the brief. In every instance “short of voluntary abandonment or relinquishment ” the equities of the case have been fully recognized and rights accorded. We believe they are justified by law in so holding.
The petition is dismissed. It is so ordered.
All concur.