Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court.
The plaintiff filed in the year 1903 an application for the purchase of coal lands and paid the purchase price. Subsequently upon a contest between him and one Dietz it was ruled by the Land Office that plaintiff’s “ entry was made contrary to law and can not be sustained.” As a result of the contest, which extended over a period of several years, the claims of both Dietz and plaintiff were set aside. In June, 1909, the plaintiff applied to the Commissioner of the General Land Office for the return of the purchase money paid on the land in question, and his application was refused. He appealed from the Commissioner to the Secretary of the Interior. Upon this appeal it was held by the Secretai-y that the entry had been procured “by concealing from the register and receiver the fact that at the time of making his entry, he (plaintiff) had made an agreement to convey one-half of the land to another person. If that fact had not been concealed, his entry would not have been allowed.” *157 Repayment was refused. Commenting on several rulings of the department in such cases it was said by the Secretary that the department had held “ that one who suppresses information which would defeat an entry commits a fraud as great and as far-reaching as if he were to make a false statement upon which the entry was allowed”; that such an entry should be canceled for fraud, and when so canceled repayment of the purchase money would not be made, citing Latham Case, 20 L. D., 379, and the Secretary’s opinion concludes:
“ The department believes that the decision in that case properly construes the repayment act, that it was not the purpose of Congress to authorize the repayment of moneys paid in connection with an attempt to acquire illegally a tract of public land. To hold otherwise would place a premium on fraud and concealment which would seriously interfere with the administration of the public-land laws.”
The plaintiff then brought his action in this court to recover the purchase price he had paid, relying upon section 2 of the act of June 16, 1880, 21 Stats., 287, and section 1 of the act of March 26, 1908, 35 Stats., 48. Quoting these sections of the law, the brief for plaintiff states:
“ It is our contention that claimant’s coal-land entry was erroneously allowed, since he failed to file with it the affidavit required by paragraph 32 of the coal-land regulations, to the effect that the entry was being made for his own benefit exclusively; and that there was no fraud or attempted fraud in connection with the entry.”
The first branch of this contention is referable to the act of 1880, and the second to the act of 1908. Section 2 of the act of 1880 provides:
“ In all cases where homestead or timber-culture or desert-land entries or other entries of public lands have heretofore or shall hereafter be canceled for conflict, or where, from any cause, the entry has been erroneously allowed and can not be confirmed, the Secretary of the Interior shall cause to be repaid to the person who made such entry, or to his heirs or assigns, the fees and commissions, amount of purchase money, and excesses paid upon the same, upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to said land, whenever such entry shall have been duly canceled by the Commissioner of the *158 General Land Office, and in all cases where parties have paid double-minimum price for land which has afterwards been found to be within the limits of a railroad land grant the excess of one dollar and twenty-five cents per acre shall in like manner be repaid to the purchaser thereof or to his heirs or assigns ”;
and section 1 of the act of 1908 provides:
“That where purchase moneys and commissions paid under any public-land law have been or shall hereafter be covered into the Treasury of the United States under any application to make any filing, location, selection, entry, or proof, such purchase moneys and commissions shall be repaid to the person who made such application, entry, or proof, or to his legal representatives, in all cases where such application, entry, or proof has been or shall hereafter be rejected and neither such applicant nor his legal representatives shall have been guilty of any fraud or attempted fraud in connection with such application.”
The contention that the entry was “ erroneously allowed ” because of a failure to file the affidavit required by paragraph 32 of the regulations is clearly untenable in view of the finding that such an affidavit was in fact filed. In some .of the many hearings regarding plaintiff’s entry, had before proper officers, it appears to have been accepted as a fact that while plaintiff’s application contained the necessary averment, in compliance with paragraph 32, and was signed by plaintiff, the officer had not affixed his jurat thereto, and hence that the paper was not sworn to, but a later, and clearly the more accurate, view of the transaction was taken. The earlier view arose from treating two sheets as distinct, when, in fact, they were parts of one paper which was duly sworn to and filed. The act of 1880 restricts the right to repayment to cases in which the entry has been erroneously allowed, “ an expression which denotes some mistake or error on the part of the land officers, whereby an entry is allowed when it should be disallowed, and not some fraud or false pretense practiced on them whereby an applicant appears to be entitled to the allowance of an entry when in truth he is not.” United States v. Colorado Anthracite Co., 225 U. S., 219, 224. This case arose prior to the act of 1908, and furnishes no support to plaintiff’s contention that *159 the entry was “ erroneously allowed.” The facts show that he filed the affidavit required by paragraph 82.
Nor does plaintiff sustain his right to recover by virtue of the act of 1908. The facts show that he applied to purchase the coal land, alleging that the entry was for his own benefit and not for the use and benefit of any other party. But when his application was filed on July 8 the plaintiff had executed to one Meyer a warranty deed for an undivided one-half interest in the land. This deed was dated and acknowledged before a notary public on July 6, two days prior to the filing of the application. It was absolute in terms, and the theory that it was intended as a mortgage to secure a loan from Meyer finds no support in the tendencies of the evidence. It is true that plaintiff consulted counsel as to his right to borrow money from Meyer to pay for the land, and was advised that he could give an interest in the land as security, but the transaction did not take that course. Plaintiff conveyed to Meyer an undivided half interest in the land, and later, after the purchase money had been advanced by Meyer to plaintiff, the latter executed a mortgage on his remaining undivided half interest to Meyer to secure, not the $3,200 of purchase money, but the sum of $1,840. Meyer had paid approximately $600 toward the development of the land and the expenses and costs of contest. The deed to him recited a consideration of $2,000 and the purchase price to enter the land was $3,200, which Meyer also advanced. The mortgage evidently represented the. difference between the consideration named in the deed and the total sum advanced by Meyer. Advice of counsel will not avail plaintiff under the facts of this case. Williamson case, 207 U. S., 425, 453.
The deed and ‘the mortgage were filed for record on July 14, 1903, and. as late as 1911 Meyer and plaintiff recognized the true character of the deed when Meyer executed to plaintiff a quitclaim of his interest in the land and a release of any damages that could be claimed by reason of the warranty in plaintiff’s deed to Meyer.
It is significant that plaintiff was not financially able to make the entry, and that Meyer not only advanced to plaintiff the necessary purchase price but aided with the funds *160 necessary to defray the expenses and costs of contest and for development purposes. Meyer accompanied plaintiff to the office of the attorney and was present when plaintiff’s contest of the Lynch entry was prepared, and he accompanied plaintiff to the land office when the purchase money was paid. He was one of the witnesses who corroborated the statements in plaintiff’s application. With a deed from plaintiff in his possession for an undivided half interest in the land Meyer swore that the statements in plaintiff’s application were true, and one of these was that the land was being entered for plaintiff’s benefit and not for the benefit of another. Manifestly, Meyer had an interest different from that of a lender of the purchase money. Plaintiff was not familiar with the mineral lands and employed one Hillock to represent him in making the nonmineral affidavit and development of the land. Both Meyer and Hillock had exercised their several rights to enter coal land by purchase, and it seems clear that the plaintiff allowed them to use him in an effort to get land which neither of them could lawfully enter in his own name or right.
The act provides for repayment of the purchase money to the person who made the application for entry where the entry is rejected, and the applicant shall not “have been guilty of any fraud or attempted fraud in connection with such application.” We ihink there can be no doubt that if a patent had jssued uainfciff upon the application that was made and was subsequently attacked by the Government upon the ground that it had been procured in violation of the statute authorizing purchase by'an entry man for his own benefit and not for the benefit, direct ’or indirect, of another, a court would have set aside the patent puffer the facts developed in this case. United States v. Trinidad Coal Co., 137 U. S., 160, 167; Keitel Case, 211 U. S., 370; and Colorado Anthracite Co. Case, supra; Northern Pacific Coal Co., 7 L. D., 422. As early as 1895 the Land Office has held that where the entryman knew the entry was not for hiss own benefit but for the benefit of another the entry was fraudulent, and the applicant would not, upon cancellation of the entry, be repaid the purchase price. Mary Latham, 20 L. D., 379. The Secretary’s opinion in the instant case *161 follows the same rule and seems to us to be just as well as legal.
The plaintiff had introduced testimony to show that he bore a good character in the community in which he lived. He is a dentist by profession and his neighbors speak well of him. The plaintiff testifies that he was not questioned by the land officers upon the matter of any transfer by him, or whether he was solely interested in the proposed entry, and without objection he was allowed to state that if he had been questioned, he would have disclosed the entire transaction. But the fact remains that plaintiff made a statement that was untrue; that it was a statement material to a proper application to purchase the land; that he brought with him two persons to corroborate his application, and one of them was the person to whom plaintiff had already conveyed an undivided half interest in the land, and to whom he intended to execute a mortgage upon the other half; and this person also made affidavit to the statements in plaintiff’s application, and that it was upon this application that the entry was allowed. The statement as made misled the land office to the extent that a final receipt for the purchase money was issued. If the statement had not been made, or if the real facts had been stated, it must be assumed that the application would have been rejected.
We concur in the view expressed by the Secretary in his opinion upon this question, and plaintiff’s petition will be dismissed.