### DIAMOND COAL & COKE CO. OF WYOMING v. PAYNE, Secretary of the Interior, et al.

(Court of Appeals of District of Columbia. Submitted February 10, 1921. Decided March 7, 1921.)

### No. 3437.

1. **Public lands ⬅120—Equity will not compel restoration of scrip used in fraudulent entry.**

   In the absence of a statute making it the duty of the Secretary of the Interior to return scrip on which had been based fraudulent entries of public lands, a court of equity will not extend its aid to the fraudulent entryman in procuring a return of such scrip, even if the rule that equity refuses to give the innocent party more than he is entitled to, and therefore compels him to return what he received from the transaction, would apply where the fraud was against the government, and would require the government to return the scrip, if such return had been asked in the suit for cancellation of the patents issued on the fraudulent entries.

2. **Constitutional law ⬅312—Public lands ⬅120—Due process does not require injunction to compel return of public land scrip fraudulently used.**

   The denial by a court of equity of a mandatory injunction compelling the Secretary of the Interior to return to a fraudulent entryman the public land scrip used in making the fraudulent entries, on the ground that equity will not relieve against the consequences of the party's own fraud,

---

does not deprive the entryman of his property without due process of law, since it does not adjudicate that the Secretary is entitled to retain the scrip.

Appeal from the Supreme Court of the District of Columbia.

Suit for mandatory injunction by the Diamond Coal & Coke Company of Wyoming, a corporation, against John Barton Payne, Secretary of the Interior, and others. From a decree dismissing the bill for want of equity, complainant appeals. Affirmed.

W. P. Fennell and Robert B. Fennell, both of Washington, D. C., for appellant.

C. Edward Wright, C. D. Mahaffie, and W. H. Wahly, all of Washington, D. C., for appellees.

SMYTH, Chief Justice. The appellant, which we shall call the coal company, sought by its bill a mandatory injunction against the Secretary of the Interior and the Commissioner of the General Land Office to compel them to surrender to it certain papers evidencing soldiers' additional rights (section 2306, R. S. [Comp. St. § 4594]), and called "scrip" in the record, valued at $28,400, or, in lieu thereof to give to the coal company a letter recognizing its ownership of the scrip. There were two other defendants, Harrison and Sneddon, but they were merely nominal. They filed a joint answer, confessing all the allegations of the bill. The Secretary and the Commissioner moved to dismiss the bill. The motion was sustained, and, the coal company electing to abide by its bill, a decree was passed, dismissing the bill for want of equity.

It appears from a decision of the Supreme Court of the United States (Diamond Coal & Coke Co. v. United States, 233 U. S. 236, 34 Sup. Ct. 507, 58 L. Ed. 936), made a part of the bill by reference, that Harrison and Sneddon, with money furnished by the coal company, purchased the scrip in question and used it in securing from the government certain of the public lands which they represented to be agricultural lands. Patents, 34 in number and conveying 2,840 acres, were issued to them, and thereafter they conveyed the lands by deed to the coal company. The government, believing that the lands contained coal, and were not agricultural lands within the meaning of the law, instituted a suit in the Circuit Court of the United States against the coal company to recover the title, on the ground that the patents were fraudulently procured. The court ruled against the government. The Circuit Court of Appeals reversed the ruling, holding that the lands contained coal, and that Harrison and Sneddon and the coal company knew it at the time the patents were issued and the title conveyed, and directed that a decree be entered annulling and canceling the patents and the deeds as prayed; hence that the coal company had procured the title through fraud. On appeal to the Supreme Court of the United States the decree was in all things affirmed.

The same opinion also discloses that prior to this entry of the lands the coal company had made an attempt to acquire a part of them by inducing some of its employés and others to make homestead

entries of the lands under an agreement whereby the company was to bear the expense, compensate the entrymen for the exercise of their homestead rights, and receive the title when perfected—an arrangement that was fraudulent and in direct violation of the homestead law. This attempt, however, was abandoned, and resort was had to the scrip which we have just mentioned. Thus it is made clear that the well-considered purpose of the coal company, and of those whom it employed to serve it in connection with procuring the title, was fraudulent. About this there can be no doubt.

In the suit to set aside the patents and deeds, and to restore the title to the government, the coal company made no application to have the scrip returned to it in the event the court found that the title had been illegally procured. An elaborate brief has been filed by the coal company, in which we are invited to consider many questions which, as we view the case, have no relation to the controversy.

[1] Our attention has not been directed to any statute or decision which in so many words or by fair import says it is the duty of the Secretary of the Interior to return the scrip nor have we found any. General principles, then, of equity, must govern. The case as it is before us is this: Should a court of equity issue a mandatory injunction at the prayer of the coal company to rescue it from the plight in which its own dishonesty has placed it? Does the coal company's situation contain any element which appeals to a court of conscience?

It was said a long time ago by Mr. Chief Justice Taney that "conscience, good faith, and reasonable diligence" alone call into action the powers of a court of equity. McKnight v. Taylor, 1 How. 161, 11 L. Ed. 86. The coal company may have on its side the last element of the formula, but certainly it is lacking in the first two. In Dent v. Ferguson, 132 U. S. 50, 65, 10 Sup. Ct. 13, 18 (33 L. Ed. 242) the court said:

"But, if a party seeks relief in equity, he must be able to show that on his part there has been honesty and fair dealing. If he has been engaged in an illegal business and been cheated, equity will not help him."

Mr. Justice Van Devanter, in United States v. Colorado Anthracite Co., 225 U. S. 219, 224, 32 Sup. Ct. 617, 56 L. Ed. 1063 spoke to the same effect. In that case plaintiff had secured a judgment in the Court of Claims for the repayment of the purchase price paid to the government for public lands, the entry of which was subsequently canceled. The learned Justice said, speaking for the court, that if the company was engaged in an effort to acquire the land fraudulently, in contravention of the coal land law, it could not invoke the equitable principle necessary to secure for it from the government a refund of the money which it had paid.

Another case which throws light on the subject is Causey v. United States, 240 U. S. 399, 402, 36 Sup. Ct. 365, 367 (60 L. Ed. 711). It was a suit to cancel a homestead entry fraudulently made by Causey for the benefit of one Bradford. The land was paid for, as here, with scrip. Defendant urged that the bill could not be maintained, because it did not contain an offer to return the scrip received when the entry was made. The court rejected the contention and said:

"When a suit is brought to annul a patent obtained in violation of these restrictions, the purpose is not merely to regain the title, but also to enforce a public statute and maintain the policy underlying it. Such a suit is not within the reason of the ordinary rule that a vendor, suing to annul a sale fraudulently induced, must offer and be ready to return the consideration received. That rule, if applied, would tend to frustrate the policy of the public land laws; and so it is held that the wrongdoer must restore the title unlawfully obtained and abide the judgment of Congress as to whether the consideration paid shall be refunded."

See, also, United States v. Trinidad Coal Company, 137 U. S. 160, 170, 171, 11 Sup. Ct. 57, 34 L. Ed. 640; Heckman v. United States, 224 U. S. 413, 447, 32 Sup. Ct. 424, 56 L. Ed. 820; United States v. Colorado Anthracite Co., supra.

A fortiori he should not be permitted to maintain a separate suit for its recovery where he must plead his own misdeed as the basis for the relief which he seeks. It is said that this decision is bottomed on a statute not applicable in a case like the one before us. The decision does not say so. True, a statute is cited in connection with prior decisions of the court; but the opinion does not rest on the statute, but on a policy which underlies the public land laws. That policy, as we interpret it, is to give no encouragement to one bent on wrongdoing to advance on the theory that if he succeeds he gets the lands, but if he fails he gets his money or his scrip back, and thus loses nothing by the attempt.

Much reliance is placed by the coal company on Stoffela v. Nugent, 217 U. S. 499, 501, 30 Sup. Ct. 600, 54 L. Ed. 856. The defendant in that case acted fraudulently in procuring title to some land and a mortgage. The person defrauded brought suit to set aside the deed and cancel the mortgage. Plaintiff's right to the land was conditioned upon the payment by him to the former owner of $15,700. In the transaction by which the defendant acquired title, he paid $10,000 of this amount and gave the mortgage in question for the balance. Defendant contended that it would be inequitable to cancel the deed and mortgage in favor of the plaintiff, without making provision for the payment by him to the defendant of the amount which the latter had paid. Speaking to this argument the court said of the defendant:

"He may have no standing to rescind his transaction; but, when it is rescinded by one who has the right to do so, the courts will endeavor to do substantial justice so far as is consistent with adherence to law."

That was a suit between private parties, where the public policy mentioned in the Causey Case did not apply. If it were not for this, the case might be an authority for the court in the suit by the government against the coal company to cancel the patents and the deeds, to require the government to surrender the scrip as a condition of the cancellation, but furnishes no warrant for saying that the company has any standing in a suit instituted by itself for the return of the scrip. In other words, in a suit brought by the innocent party, the court, in determining the equity to which he is entitled, should take into account what belongs to the other party, and award it to him. But this is done not for the wrongdoer's sake (Pullman's Car Co. v. Transporta-

tion Co., 171 U. S. 138, 150, 18 Sup. Ct. 808, 43 L. Ed. 108), but because equity refuses to give to the innocent party more than he is entitled to. The rule, however, is different where the guilty one is the plaintiff. There he must found his suit on the fraudulent transaction, and thus run counter to the maxim "Ex dolo malo non oritur actio." The scrip in the case before us was delivered by the company to the government as a part of a fraudulent scheme. It is upon that delivery and the attending circumstances that the coal company rests its present suit.

"No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act." Pullman's Car Co. v. Transportation Co., supra, 171 U. S. 151, 18 Sup. Ct. 813, 43 L. Ed. 108.

[2] It is said that to retain the scrip is to deprive the coal company of its property without due process of law, and therefore that equity should grant the relief desired. This is a non sequitur. We do not pass upon the right of the Secretary of the Interior to retain the scrip. What we do is to refuse the aid of equity to extricate the coal company from the consequences of its own wrongdoing.

There being no error in the record, the decision is affirmed, with costs.

Affirmed.

Mr. Justice STAFFORD, of the Supreme Court of the District of Columbia, sat in the place of Mr. Justice ROBB in the hearing and determination of this appeal.