## CHALMETTE OIL DISTRIBUTING CO. v. CHALMETTE PETROLEUM CORPORATION.

### Civil Action No. 409.

District Court, E. D. Louisiana,
New Orleans Division.

Aug. 27, 1943.

See, also, 1 F.R.D. 576.

Edward J. De Verges and McCloskey & Benedict, all of New Orleans, La., for plaintiff.

Monroe & Lemann, of New Orleans, La., for defendant. .

CAILLOUET, District Judge.

This action is one on a Louisiana contract, relating to Louisiana real estate and movable property, which was made and entered into between two Louisiana corporations, for execution in Louisiana.

The record establishes the fact that the then owner of said property, which leased the same and granted an option of purchase to the lessee, has been succeeded by a Delaware corporation of identical name, and that the action, which plaintiff originally filed in the appropriate State court, was removed to this Federal Court upon the petition of said successor; which successor corporation, in pursuance of a reorganization plan, had acquired all of the assets and assumed all of the obligations of its predecessor, including the leased property "together with other property of the vendor, comprising all of the property of the vendor", on January 20, 1940, as fully evidenced by an authentic act of sale of that date.

On October 1, 1934, plaintiff had entered into a written agreement of lease, for the

term of 24 months expiring September 30, 1936, with the former Louisiana corporation, known as the Chalmette Petroleum Corporation; said contract granted it the right and privilege to renew the lease, on the same terms and conditions, for an additional period of 3 years, as well as the option to purchase the property and equipment covered by the lease, at any time during the term or renewal thereof, for the sum of $50,000 cash; on September 2, 1936, it exercised its said right and privilege to so renew, and a similar written lease between the parties was executed on that date, which, while again granting similar option to purchase for $50,000 cash, did not accord the right to renew the lease.

Each of the said two contracts provided for a monthly cash rental of $400, payable four months in advance, in addition to the payment of the real estate taxes assessed upon and against the leased land, and other conditions; both instruments were signed by R. P. Batson, Secretary of the Chalmette Petroleum Corporation, lessor, who was thereto duly authorized by resolution of the corporate Board of Directors.

On May 18, 1939, the Board of Directors of the lessor corporation authorized, by a vote of 6 to 1, that the then existing 3-year lease "be extended for a period of two (2) years, under the same terms and conditions as the existing lease, with the exception that the yearly rental be increased from $4,800.00 to $6,000.00 for the next two (2) years, beginning October 1, 1939", and designated D. B. Williams, Executive Vice-President, to sign the "extended" lease on behalf of the lessor.

The contract was actually executed and signed on the same day, and the new lease was to expire on September 30, 1941. It provided, as did the former two leases, that the lessee, Chalmette Oil Distributing Co. Inc., would enjoy the option to purchase the leased property and equipment at any time during the term of the lease, or any renewal thereof, for $50,000 cash.

On March 19, 1940, due notification of its intention to exercise its option to purchase was given by said Chalmette Oil Distributing Company, Inc., to its lessor; upon consideration of said notification by a Board of Directors' meeting of Chalmette Petroleum Corporation held on March 21, 1940, it was decided to delay action upon the matter until an appraisal of the property involved could be made; on April 3, 1940, formal approval of the appraiser's bill "for appraisal of the land at our City Park Plant now under contract to the Chalmette Oil Distributing Company, Inc.", was registered by the Board's Executive Committee; and the action of the Board of Directors, taken at its meeting held on May 9, 1940, was reported in the official minutes thereof, as follows, viz.:

"The sale of the City Park Plant as reported at previous Board meetings, was discussed. It was decided to sell the plant if we could obtain an acceptable price, and the purchaser changed the name from the Chalmette Oil Distributing Company, Inc., to some other name as for example 'Gillette Oil Distributing Company, Inc.'

"It was suggested that we request $75,-000.00, and that we would accept $50,000.00 in cash and the balance on second mortgage.

"Mr. Lemann, the Company's attorney, was to discuss this with the attorney for the Chalmette Oil Distributing Company, Inc. * * *"

When it became clear that Chalmette Petroleum Corporation did not intend to execute the required act of sale, which would permit Chalmette Oil Distributing Company, Inc., to exercise its option to purchase, the latter placed the former in default; and on June 18, 1940, Chalmette Petroleum Corporation did actually advise the option holder by means of formal written communication, that it would not make conveyance in keeping with the option granted, "unless ordered to do so by decree of a court of final jurisdiction."

This present suit for specific performance then followed, and in due time answer was made which, in effect, admits all of the plaintiff's allegations, except that it denies that plaintiff is entitled to the relief sought because (so the pleading runs) "Chalmette Petroleum Corporation was procured to execute the agreements of lease referred to in the petition by the recommendation and advice of D. B. Williams, who was at the time Vice-President and General Manager of Chalmette Petroleum Corporation, and R. P. Batson, who was at the time Secretary-Treasurer of Chalmette Petroleum Corporation", and since the execution of said agreements defendant "received information indicating that at the time said agreements of lease were entered into, said D. B. Williams and said R. P. Batson * * * had an undisclosed and secret interest in the plaintiff corporation", which was known to said plaintiff, but not

to defendant, and said individuals named, and each of them, "have shared in the earnings and profits of·the plaintiff corporation".

The defendant next avers that "the said agreements should be set aside and the plaintiff should be required to account to the defendant for all the earnings and profits which it has made through and by reason of said agreements" and prays that plaintiff's demand be rejected and said agreements set aside, with plaintiff ordered to account to defendant "for all the earnings and profits made by virtue of said agreement".

Here, it is convenient to note that it was on or about November 6, 1939, that there allegedly came to the Chalmette Petroleum Corporation the information which indicated to it (so claims defendant) that Williams and Batson on October 1, 1934— when, for the first time was leased its City Park plant, with option to purchase— "had an undisclosed and secret interest" in the then newly-formed Chalmette Oil Distributing Company, Inc.

In due course, the plaintiff filed its motion for a summary judgment on the face of the pleadings because, as it claimed, the pleadings and the answer of defendant to interrogatories showed that there was no genuine issue as to any material fact and that plaintiff was entitled to judgment as a matter of law.

Because there did appear to be a genuine issue as to the material facts alleged by the defendant in and under the closing paragraphs of its answer, hereinabove specially referred to, such motion for summary judgment was denied, but, at the same time, it was ordered that in such trial as might follow in due course, "the sole material facts in dispute shall be only such as are so alleged by the defendant as the basis for its prayer aforerecited, and none ·other, and each and every other material fact alleged in the pleadings and as to which there so exists no substantial controversy shall be deemed established, and the trial shall be conducted accordingly."

While the word "fraud" nowhere appears in defendant's answer, it contended (as it still does) that the·case involved "an issue ·of fraud" and, although study of the record in its present completed form may lead ·one to seriously doubt the propriety of having accorded the defendant as much latitude ·as it was in its attempted substan-tiation of its claimed legal defense against being ordered to specifically perform, the fact remains that although it was permitted the fullest possible range of investigation and attempted proof, it did fail to make out a case of fraud against Chalmette Oil Distributing Company, Inc.

■ The law presumes, in the absence of evidence to the contrary, that the business transactions of every man are done in good faith and for honest purposes; and fraud is never to be imputed except on legal and convincing evidence produced by the one who charges it; the matter must not be left to mere guess and speculation. Jones v. Simpson, 1886, 116 U.S. 609, 6 S. Ct. 538, 29 L.Ed. 742; United States v. Colorado Anthracite Co., 1912, 225 U.S. 219, 32 S.Ct. 617, 56 L.Ed. 1063; Continental Casualty Co. v. First Nat. Bank of Temple, 15 Cir., 1941, 116 F.2d 885, 135 A. L.R. 1141; Garnier et al. v. Aetna Ins. Co., 1935, 181 La. 426, 159 So. 705; Mente & Co., Inc., v. Roane Sugars, Inc., 1942, 199 La. 686, 6 So.2d 731.

■ It is true, as contended by defendant, that direct and positive evidence is not necessary to prove fraud, because, as a matter of fact, fraud is seldom provable except by means of circumstantial evidence; inferences of fraud may be drawn from proved circumstances and certain circumstances even create presumptions of fraud, but neither inference nor presumption "strong and almost inevitable", or, in the language of Article 2288 of the Louisiana Revised Civil Code, "weighty, precise and consistent", is reflected by the record herein. See: Di Martino v. Continental Ins. Co. of New York, 1937, 187 La. 855, 175 So. 598.

■ Even if it can be fairly held that defendant's answer legally set up a case of actionable fraud in defense against plaintiff's action for specific performance, and the same were found substantiated by proof, there would yet remain for consideration the question as to what legal effect should be ascribed to defendant's aforerecited acts in the Spring of 1940, after its receipt of the information, on or about November 6, 1939, which indicated (so it alleges) that Williams and Batson, to the knowledge of plaintiff, but unknown to defendant, "had an undisclosed and secret interest in the plaintiff corporation" and "have shared in the earnings and profits" thereof.

Did not the defendant continue to accept benefits under the new contract of May 25, 1939, after it had been in possession, for a considerable time, of the information which (so it pleads) indicated to it fraud and deceit of such nature as alone warranted urging the same as a defense against plaintiff's action for specific performance of said contract, which defendant prays to have rescinded for fraud?

Did it not otherwise conduct itself with respect to such contract as though it were a subsisting and binding engagement? See: 9 Am.Jur. (1937) "Cancellation of Instruments", § 46, pp. 389, 390.

■ The option to purchase which plaintiff sues to exercise was incorporated as part and parcel of each of the three contracts of lease, and such option could never be dissevered from the lease; the lessee always enjoyed the legal right, within the lease term, to purchase the leased property for $50,000 cash—the lessor could not withdraw the option. Kinberger v. Drouet, 1922, 149 La. 986, 90 So. 367; Standard Oil Co. of Louisiana v. Milholland, 1929, 167 La. 707, 120 So. 59.

■ Specific performance of a contract cannot be demanded as an absolute right, as it rests largely within "judicial" discretion, to be exercised in strict conformity with equity and justice, upon consideration of all attendant circumstances. Tri-State Transit Co. of Louisiana, Inc., v. Sunshine Bus Lines, Inc., 1935, 181 La. 779, 160 So. 411; Marthinson v. King et al., 5 Cir., 1906, 150 F. 48.

■ The prayer for specific performance herein has been duly considered in the light of the evidence developed at the trial, including that establishing defendant's officially-expressed willingness to sell, on or about May 9, 1940, to he option holder (despite the charge of fraud levelled at its claimed lawful enjoyment of the option) provided that $25,000 were added to the stipulated purchase price of $50,000, and such option holder consented to change its corporate name of Chalmette Oil Distributing Company, Inc., by substituting, for instance, "Gillette" for the "Chalmette"; and, in equity and justice, plaintiff's prayer for specific performance seems wellfounded. (La.) Rev.Civ.Code, Arts. 1926, 1927, 1799, 1803. Gulf Refining Co. of Louisiana v. Hayne et al., 1921, 148 La. 340, 86 So. 891. Marthinson v. King et al., supra.

The Court's formal findings of fact and conclusions of law are as follows, viz.:

## Findings of Fact.

1. The written lease contract of May 25, 1939, by and between plaintiff Chalmette Oil Distributing Company, Inc., and defendant Chalmette Petroleum Corporation, incorporated as part and parcel thereof (as did their antecedent like lease contracts of October 1, 1934, and September 2, 1936, respectively) an option to purchase "the property and equipment covered by this lease any time during the term of the present lease, or any renewal thereof" for the sum of $50,000 cash.

2. During the term of said lease of May 25, 1939, plaintiff, as option holder, duly sought to exercise such thrice-granted option to purchase.

3. Defendant refused to permit such exercise although it signified its readiness to sell for $75,000—$50,000 cash, $25,000 on credit terms—provided that Chalmette Oil Distributing Company, Inc., changed its name, for instance, to Gillette Oil Distributing Company, Inc.

4. Plaintiff, as is admitted by defendant, then formally placed the defendant in default.

## Conclusions of Law.

1. Judgment should be entered in favor of plaintiff Chalmette Oil Distributing Company, Inc., and against defendant Chalmette Petroleum Corporation—

1—ordering said named defendant to sell and convey all of the property and equipment covered by the three leases of October 1, 1934, September 2, 1936, and May 25, 1939, to Chalmette Oil Distributing Company, Inc., option holder, by and through the medium of a formal act, to be executed and signed within fifteen (15) days from and exclusive of this August 27, 1943, by said Chalmette Petroleum Corporation's proper officer; such sale and transfer is to be so effected upon payment then and there made to the vendor of the stipulated contract sum of Fifty Thousand ($50,000) Dollars cash, subject to deduction of such aggregate cash amount as said Chalmette Petroleum Corporation may then be holding in its possession to the credit of said Chalmette Oil Distributing Company, Inc.; and

2—decreeing, furthermore, that should said Chalmette Petroleum Corporation fail to so deliver title to the said property and equipment, then said Chalmette Oil Dis-

240

tributing Company, Inc., shall deposit the said sum of Fifty Thousand ($50,000) Dollars cash (or the net balance due after first taking credit for whatever amount is held by Chalmette Petroleum Corporation, as aforesaid,) in the Registry of the Court, and, upon its so doing, said judgment of Court shall then forever stand as the title held, possessed, owned and enjoyed by said Chalmette Oil Distributing Company, Inc., in and to said mentioned property and equipment; and

3—condemning defendant Chalmette Petroleum Corporation to pay all costs.

Therefore, let such a judgment be forthwith entered.